UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-21963-KMM

DANIA RAVELO,

    Plaintiff,

v.

THE COVER BEAR, LLC,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court upon Defendant The Cover Bear, LLC's ("Defendant") Motion to Compel Arbitration, or, Alternatively to Dismiss. ("Mot." or "Motion") (ECF No. 12). Plaintiff Dania Ravelo ("Plaintiff") has not filed a response, and the time do so has passed. The Motion is now ripe for review.

**I.  BACKGROUND**

Plaintiff has filed a class action Complaint against Defendant, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* ("Compl." or "Complaint") (ECF No. 1). Plaintiff is a resident of Broward County, Florida, and registered her cell phone number on the national Do Not Call Registry ("DNCR"). *Id.* ¶¶ 8, 26. Plaintiff brings the following causes of action against Defendant: (1) illegal solicitation of persons on the DNCR, *id.* ¶¶ 47–62; and (2) illegal use of an auto-dialer calling system, *id.* ¶¶ 63–73. Now before the Court is Defendant's Motion to Compel Arbitration, which argues that Defendant is a third-party beneficiary of an arbitration agreement Plaintiff entered into with SeguroPremier ("Seguro").

**II.  LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, provides a federal "policy

favoring arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). As a threshold matter, "[u]nder both the FAA and the Convention 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Put simply, parties will not be required to arbitrate absent their consent to arbitration. *See id.* Generally, "one who is not a party to an agreement cannot enforce its terms against one who is a party" because the right of enforcement belongs to those who have agreed to be bound. *Lawson v. Life of the S. Ins. Co., 648 F.3d 1166*, 1168 (11th Cir. 2011). Nevertheless, "a nonparty may force arbitration if the relevant state contract law allows him to enforce the agreement to arbitrate." *Id.* at 1170 (citation and internal quotation marks omitted). Accordingly, the issue of whether a non-signatory can be bound to an arbitration agreement is controlled by state law. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

**III.   DISCUSSION**

As a preliminary manner, Plaintiff's failure to respond to the instant Motion enables this Court to construe the Motion as unopposed. *See Hosseinzadeh v. Green Point Mortg. Funding, Inc.*, 577 F. App'x 925, 929 (11th Cir. 2014) (affirming granting a motion to dismiss as unopposed); *see also Calderon v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-21807, 2025 WL 1295040, at *3 (S.D. Fla. Feb. 19, 2025) (citing *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014)) ("The failure to respond to Defendants' argument constitutes a waiver. Given that Plaintiff did not address Defendant's argument, the Court deems Plaintiff's argument as abandoned.") (cleaned up). Moreover, Plaintiff acknowledges the instant Motion in the Parties' Joint Scheduling Report. (ECF No. 13 at 2) ("Plaintiff estimates that approximately 4-5 days will be required for

2

trial. Defendant believes that the matter will be sent to arbitration."); *see also id.* at 3 ("At this time, Plaintiff does not have any additional information for the Court. Defendant asserts that it is not seeking any other affirmative relief from the Court at this time while its Motion to Compel Arbitration or, Alternatively, to Dismiss is pending."). Plaintiff's response to the Motion was due on July 23, 2025, and Plaintiff has neither responded nor filed a Motion for Extension of Time. Notwithstanding Plaintiff's failure to respond, the Court will consider the Motion on the merits.

  A.  **The Arbitration Agreement Is Valid as to Defendant**

"Where the parties have agreed to arbitrate their dispute, the job of the courts—indeed, the obligation—is to enforce that agreement." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (citation omitted). In its Motion, Defendant argues that Plaintiff "consented to receiving the marketing and informational text messages" referenced in the Complaint and that Plaintiff "agreed that all disputes or claims with the website Host or a third-party beneficiary would be settled by final and binding arbitration." Mot. at 1. Consequently, the Court will first consider whether Defendant may enforce any arbitration agreement reflected in the Terms.

In support of its Motion, Defendant filed the "Declaration of Noam Samson" along with Seguro's "website Privacy Policy, Terms & Conditions, Contact Us, SMS Terms, Disclaimer, and Unsubscribe terms are attached to the Declaration as Exhibits A through F[,]" (collectively, as the "Terms"). Mot. at 4 n.1. Defendant asserts that "Seguro is a network of insurance carriers and advertisers which provide insurance assistance to a consumer, in the form of a policy or similar products" and that Plaintiff gave "written consent to Seguro, did transact business with Seguro, and did make an insurance product inquiry with Seguro." Mot. at 3–4. The Terms contains the following clauses:

> It is every consumer's right to add his or her telephone number to the National Do Not Call Registry, which, in general, applies to any plan, program, or campaign to

3

> sell goods or services through interstate phone calls. However, a company may call a consumer with whom it has an established business relationship for up to eighteen (18) months after the consumer's last purchase, delivery or payment, and for up to three (3) months after the consumer submits an application or an inquiry to the company, even if the consumer's number has been added to the National Do Not Call Registry. Seguropremier.com does not make outbound phone calls to consumers, and therefore does not maintain an internal do not call registry of its own. If you no longer wish to receive phone calls from an insurance carrier you got connected with, you will have to contact them directly and request that your telephone number be placed on their specific do not call list. (ECF No. 12-1 at 11).
>
> Where 'prior express written consent' [sic] within the meaning of the Telephone Consumer Protection Act ('TCPA'), you consent to receive telephone calls, including artificial voice calls, prerecorded messages and/or calls delivered via automated technology, and text and SMS messages to the telephone number(s) that you provided from us and the marketing partners. *Id.* at 25.
>
> Marketing partners include . . . The Cover Bear. *Id.* at 42, 55.
>
> If you have any dispute concerning any aspect of these Terms of Website Use, the Website, or any of our services, you agree to submit your dispute for resolution by arbitration before the American Arbitration Association ('AAA') in the county where you live by filing a Demand for Arbitration. The arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of these Terms of Website Use are unenforceable. *Id.* at 26.

Defendant asserts that "[u]nder a 2014 FCC Declaratory Ruling . . . the rule on this issue is clear and unequivocal: '[A] consumer's prior express consent may be obtained through and conveyed by an intermediary[.]'" Mot. at 5. Defendant further asserts that Plaintiff "gave her consent to be called and agreed to arbitrate before the American Arbitration Association 'any dispute concerning any aspect' of the Terms." *Id.*

Nevertheless, generally a non-party to an arbitration agreement cannot compel a party to an arbitration agreement to arbitrate under Florida law. *See Florida Power & Light Co. v. Road Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006). There is, however, an exception—a non-signatory can compel arbitration if it is determined that the non-signatory is a third-party beneficiary to the contract. *Id.* at 203 (citing *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d

4

324, 326 (Fla. 4th DCA 1999)). "A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party." *Aetna Cas. & Sur. Co. v. Jelac Corp.*, 505 So. 2d 37, 38 (Fla. 4th DCA 1987). "Florida looks to the 'nature or terms of a contract' to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'" *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002) (quoting *Am. Sur. Co. of N.Y. v. Smith*, 130 So. 440, 441 (Fla. 1930)). Here, Defendant argues that it can enforce the Terms, including the arbitration agreement, as a third-party beneficiary. *See* Mot. at 8 ("Expressly in the 'Disclaimer' section of the Terms, TCB is identified in an alphabetical list by name as a Seguro Marketing Partner and third party beneficiary."). The Court agrees. As such, and absent any argument in opposition, the Court finds that Defendant is a third-party beneficiary of the contract. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr, Corp.*, 460 U.S. 1, 24–25 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

        **B.**       **Plaintiff's Claim Is Within the Scope of the Arbitration Clause**

Having concluded that Defendant may compel Plaintiff to arbitrate, the Court will next determine whether Plaintiff's claims fall within the scope of the Arbitration Clause. Defendant argues that Plaintiff's claims fall within the broad scope of the Arbitration Clause. *See* Mot. at 13 (discussing (ECF No. 12-1)) ("As the foregoing binding and persuasive authority and language in the arbitration provision, plaintiff's claims fall within the scope of the arbitration provision, which TCB—as a non-signatory, can enforce."). The plain language of the Arbitration Clause states: "[i]f you have any dispute concerning any aspect of these Terms of Website Use, the Website, or

any of our services, you agree to submit your dispute for resolution by arbitration before the American Arbitration Association ('AAA') in the county where you live by filing a Demand for Arbitration." (ECF No. 12-1 at 26). Relatedly, the "services" provided by Seguro included sharing "all the information [provided] with our network of insurance carriers" to connect individuals with prospective insurance companies. *Id.* at 12–13 (Seguro "collects information from both existing and prospective customers in an attempt to connect them with insurance carriers for the products and services they request."). Here the Complaint alleges that Defendant violated the TCPA by illegally calling phone numbers registered on the DNCR and using an auto-dialer system. Accordingly, the Court finds that Plaintiff's claims fall within the scope of the Arbitration Agreement as outlined in the Terms.[1]

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Compel Arbitration (ECF No. 12) is GRANTED. Pursuant to 9 U.S.C. § 3, this Action is hereby STAYED until arbitration has been conducted in accordance with the terms of the agreement. The Clerk of Court is instructed to ADMINISTRATIVELY CLOSE THE CASE until the time when the stay is lifted. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of July 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

---

[1] As the Court finds compelling arbitration appropriate, the Court need not address the arguments raised in Defendant's Alternative Motion to Dismiss. *See Walker v. Savell*, 335 F.2d 536, 539 (5th Cir. 1964).

cc: All counsel of record